UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**HANSE CORPORATION,**

                **Plaintiff,**

**-v-**

**HOBART BROTHERS COMPANY, et al.**

                **Defendants**

**Case No. 3:12-CV-00062**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART HOBART BROTHERS COMPANY'S MOTION TO DISMISS (Doc. # 15)**

---

This matter arises from a business relationship between Plaintiff Hanse Corporation ("Hanse") and Defendant Hobart Brothers Company ("Hobart"). Hanse also names as defendants John Does 1-4. John Does 1-4 have yet to be identified. At all times relevant Hanse and Hobart were parties to a Manufacturer's Representative Agreement ("Agreement"). It is this Agreement that gives rise to Hanse's Complaint.

Hanse brought six causes of action. Its First Cause of Action is against Hobart for breach of contract. Its Second Cause of Action is against Hobart for promissory estoppel. Its Third Cause of Action is against Hobart for unjust enrichment. Its Fourth Cause of Action is against Hobart for intentional interference with contract. Its Fifth Cause of Action is against Hobart for fraud. Its Sixth Cause of Action is against Hobart for civil conspiracy.

Now before the Court is Hobart's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. # 15. Hanse

has responded to the Motion to Dismiss (doc. #16) and Hobart has replied to Hanse's response (doc. #17). The Motion to Dismiss is, therefore, ripe for decision. The relevant factual allegations will first be set forth below, followed by an analysis of the Motion.

    **I.**       **Relevant Factual Provisions**

In the context of a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. Hanse's Complaint includes the following factual allegations:

On March 2, 1993, Hobart and Hanse entered into a Manufacturer's Service Agreement. Compl. ¶ 11. Pursuant to the Agreement, Hobart was to use its "best efforts" to support Hanse in carrying out its functions, which was the vigorous promotion of sales; providing Hobart with marketing information of the territory; providing various after sales services to Hobart, etc. Compl. ¶ 13b; Agreement 1.0. The Agreement named Hanse's territory as Korea. Compl. ¶ 11. Hanse alleges that for nearly twenty years, Hobart treated Hanse as its exclusive representative for Korea. Compl. ¶ 20.

Hanse alleges that, during the two decades in which it was working for Hobart in Korea, Hobart began doing business with another company. Compl. ¶ 21. Allegedly, Hobart set up a satellite office in Hong Kong in 2008. Compl. ¶ 22. Thereafter, Hanse was directed to submit all purchase orders and referrals to an employee in the Hong Kong office, Len Rozario. Compl. ¶ 23.

Hanse alleges that Hobart and/or the employee of the Hong Kong office, Len Rozario, acting under the authority of Hobart, began delaying responses on various quotations submitted by Hanse. Compl. ¶ 25. Furthermore, Hanse alleges that Len

Rozario, acting under the authority of Hobart, began engaging in delayed and uncooperative conduct. Compl. ¶ 26.

Hanse alleges that Hobart and Len Rozario began directly contacting various Korean clients developed and cultivated by Hanse, without Hanse's knowledge or authorization. Compl. ¶ 29. Hanse further alleges that, sometime after 2008, Hobart created an apparent scheme to replace Hanse as Hobart's representative in Korea. Compl. ¶ 30.

Hanse alleges that after 2008, Hobart and Len Rozario began making direct sales in Korea in an effort to thwart the Agreement, including sales to some of Hanse's major clients. Compl. ¶ 33. Sometime after 2008, it is alleged that the above-mentioned began to inform various Korean client developed and cultivated by Hanse that Hanse was no longer Hobart's representative. Compl. ¶ 34. Additionally, it is alleged that the above-mentioned negotiated sales within Korea and through Hanse's contacts in a further effort to circumvent the Agreement. Compl. ¶ 35.

Hanse alleges that Hobart and Len Rozario utilized contacts and relationships formed by Hanse to initiate and complete transactions, but carried out the deals without notifying Hanse in an effort to avoid paying Hobart's contractual obligation to Hanse. Compl. ¶ 37.

On or about September 9, 2011, Hanse received a 45-day notice of termination of Agreement from Hobart. Compl. ¶ 38. Hanse alleges Hobart was delaying negotiations and/or sales to avoid paying commissions. Compl. ¶ 40. The Agreement remained in effect until October 18, 2011. Compl. ¶ 41. Prior to the termination of the Agreement, Hanse submitted requests for price quotes. Compl. ¶ 42.

Hanse alleges that Hobart received, in August 2011, transactions valued at over $160,000 from Hanse's alleged Korean clients. Compl. ¶ 43. Hanse further alleges that there are other clients developed and cultivated by Hanse that are expected to generate future business and profits, which will exceed amounts previously identified. Compl. ¶ 45. Hanse also alleges that, to date, Hobart has not compensated Hanse for the submitted transactions, in amounts not less than $75,000. Compl. ¶ 46.

## II. Relevant Legal Provisions

### a. Standard of Review

Under Fed. R. Civ. P. Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (U.S. 2007). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). The complaint must be construed in the light most favorable to the non-moving party and its pleadings must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F. 2d 10, 12 (6th Cir. 1987).

While material factual allegations contained in the complaint must be accepted as true, "complaints in which plaintiffs have failed to plead enough factual detail to state a claim that is plausible on its face may be dismissed for failure to state a claim." *New Albany Tractor, Inc. v. Louisville Tractor, Inc*. 650 F.3d 1046, 1050 (6th Cir. 2011). Conclusory allegations are not accepted unless they include specific facts relating to the causes of action. *Id*.

### b. Breach of Contract

Ohio law permits recovery for a breach-of-contract action when a plaintiff can prove the following elements: (1) the existence of a contract; (2) performance by plaintiffs; (3) breach by the defendant; and (4) damage or loss to plaintiffs. *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08-cv-408, 2011 U.S. Dist. LEXIS 16338, at *21 (S.D. Ohio Feb. 18, 2011).

### c. Attachments

When an exhibit is attached to a pleading, any contradiction between the two is resolved by defaulting to the exhibit. *Williams v. CitiMortgage, Inc.*, No. 2:08-cv-368, 2011 U.S. Dist. LEXIS 35800, at *12-13 (S.D. Ohio Mar. 31, 2011); *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cit. 1998). "Indeed, if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document," and is "not bound to accept as true a legal conclusion couched as a factual allegation." *Williams*, 2011 U.S. Dist. LEXIS 35800 at *12-13 (*quoting Nat'l Assoc. of Minority Contractors, Dayton Chapter v. Martinez*, 248 F.Supp. 2d 679, 681 (S.D. Ohio 2002); *Twombly*, 550 U.S. at 555).

### d. Promissory Estoppel

Ohio law recognizes promissory estoppel as a quasi-contractual concept. *TLC Health Care Servs, LLC v. Enhanced Billing Servs.*, No. L-08-1121, 2008 Ohio App. LEXIS 3591 at *P24 (Ohio App. Aug. 22, 2008).  The elements necessary to prevail on a promissory estoppel claim are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable

and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Network Multifamily Security Corp. v. JT Schirm Farms, LLC*, No. 2:08-cv-00297, 2010 U.S. Dist. LEXIS 29967, at *27 (S.D. Ohio March 29, 2010). The purpose of promissory estoppel is to prevent injustice by creating the effect of a contract where no actual contract was in existence. *Id*. Promissory estoppel cannot be used to override the terms of an express contract if one exists. *TLC Health Care Servs, LLC* No. L-08-1121, 2008 Ohio App. LEXIS 3591 at *P24; *Keating v. America's Wholesale Lender*, No. 1:11-cv-593, 2011 U.S. Dist. LEXIS 65532, at *11 (N.D. Ohio June 21, 2011).

    e. **Unjust Enrichment**

Under Ohio law, to establish a claim for unjust enrichment, a plaintiff must prove: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009). Unjust enrichment is a quasi-contractual remedy that acts to prevent a party from harm "in the absence of an express contract or a contract implied in fact." *Id*. "Ohio law is clear that a party may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Id*.

    f. **Intentional Interference with Contract**

Under Ohio law, an intentional interference with contract claim requires establishment of the following elements: (1) the existence of a contract; (2) the defendant's knowledge thereof; (3) an intentional interference causing a breach or termination of the contract; (4) lack of justification; and (5) damages resulting from the interference. *Adkins v. Uranium Disposition Servs.*, No. 1:10-cv-460, 2011 U.S. Dist.

LEXIS 26819, at *7 (S.D. Ohio Feb. 14, 2011). "An individual or entity cannot be held liable for inducing breach of contract when that individual or entity is party to the contract." *Id*. The wrongdoer must be a third-party, and not a party to the contract. *Castle Hill Holdings, LLC v. Al Hut, Inc.*, No. 86442, 2006 Ohio App. LEXIS 1239, at *P47 (Ohio App. Mar. 23, 2006).

### g. Fraud

According to Fed. R. Civ. P. 9(b), all claims of fraud must be stated with specificity regarding "the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the misrepresentations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on fraud, and the injury resulting from the fraud." *AAA Installers v. Sears Holding Corp.*, 764 F.Supp.2d 931, 939 (S.D. Ohio 2011).

### h. Conspiracy

A civil conspiracy is a "malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 711 (Ohio App. 2009). A civil conspiracy claim is a derivative claim, only actionable with an underlying tort. *Power Marketing Direct, Inc. v. Ball*, No. 2:03-cv-1004, 2004 U.S. Dist. LEXIS 29068, at *27 (S.D. Ohio April 6, 2004).

### III. Analysis

#### a. Breach of Contract Claim

In this case, Hanse alleges that Hobart breached the Agreement in two ways: (1) by failing to pay Hanse for transactions negotiated but not sold; (2) by failing to uphold

the "best efforts" clause of the Agreement through delaying the closing of transactions and attempting to circumvent the use of Hanse as agent in order to avoid paying commission. Compl. ¶¶ 56, 59.

Pursuant to the Agreement, Section 5.0 ("Compensation"), clearly states that Hanse is to be compensated "…a commission based on the Contract Value of the **products sold** by Hobart in the Territory…" Agreement § 5.1.

While Hanse alleges that it is damaged by having not been paid commission for "transactions negotiated" within Korea, there is no claim that Hanse has not been paid commission for products sold. The Agreement does not mention payment of commissions for submission of purchase orders and price quotes submitted by Hanse. The Agreement only agrees to pay Hanse for products sold. Agreement § 5.1

Here, the factual allegation in the Complaint is inconsistent with the language in the Agreement. Because Hanse only alleges that it was not paid commission for transactions submitted, and because the language of the attached Agreement specifically states that commissions are only to be paid for products sold, Hanse's Complaint does not allege a breach. Compl. ¶¶42 a-d, 46; Agreement 5.1.

Secondly, Hanse alleges that Hobart breached the contract by failing to honor the "best efforts" clause of the Agreement. Compl. ¶ 57. Section 2.1 of the Agreement states that "Hobart shall use its best efforts to support the Representative in carrying out its functions under this Agreement." Hanse alleges that by: (1) delaying the closing of transactions; (2) obtaining quotes directly from Hanse's clients with the intention of avoiding commissions; and (3) attempting to negotiate transactions with clients within the territory without Hanse, Hobart has breached the best efforts clause. Compl. ¶ 59.

Hanse alleges that Hobart delayed the closing of transactions. Compl. ¶ 59. The Complaint alleges that Hobart and Len Rozario began engaging in delayed an uncoorperative conduct. Compl. ¶ 26. It also alleges that Hanse submitted requests for price quotes. Compl. ¶¶ 42 a-d. Had Hobart and Len Rozario handled Hanse's price quotes with their best efforts, it is possible that these price quotes could have turned into sales and commissions for Hanse. It is possible that Hobart breached its duty to Hanse and the Motion to Dismiss for failure to state a claim for breach of contract for the delay of closing of transactions must be DENIED.

Hanse alleges that Hobart received quotes directly from Hanse's clients. Section 2.2 of the Agreement specifically states that Hobart will accept orders from third parties. Hobart had the right to receive quotes directly from Hanse's alleged clients, and therefore the Motion to Dismiss for failure to state a claim for breach of contract for receiving quotes directly from Hanse's clients must be GRANTED.

Hanse alleges that Hobart attempted to negotiate transaction with clients within Hanse's exclusive territory. If Hobart did attempt to negotiate transactions with clients within the territory without Hanse's permission and without notifying Hanse, it would be acceptable for Hobart to do so. The clients are not Hanse's clients but Hobart's clients. Hanse was working as an agent for Hobart. Therefore, the Motion to Dismiss for failure to state a claim for breach of contract for negotiating transactions within Hanse's territory must be GRANTED.

    **b. Promissory Estoppel**

In this case, Hanse does not have a claim for promissory estoppel. The Complaint alleges that Hanse relied upon Hobart's representations that Hanse was the exclusive

representative in Korea, and that Hanse justifiably relied upon that promise. Compl. ¶ 67. Hanse also alleges that the reliance was reasonable and foreseeable, and that it suffered damages. Compl. ¶ 69.

However, Hanse and Hobart had an express Agreement. Compl. ¶ 11. The express contract defeats Hanse's claim for promissory estoppel. The Agreement makes no mention of Hanse being the "exclusive" representative for Korea. Rather, the Agreement only mentions that Hanse is the representative in Korea and, further, that Hobart has the right to initiate sales with third parties without alerting Hanse. Agreement § 2; Sch. 2.

### c. Unjust Enrichment

In this case, Hanse does not have a claim for unjust enrichment. The Complaint alleges that Hanse had rights to all commissions on transactions negotiated within Korea. Compl. ¶ 74. It also alleges that Hanse had rights to all commissions on transactions negotiated with Hanse's clients. Compl. ¶ 74. The Complaint alleges that Hobart did not pay Hanse commissions for price quotes received between July 2010 and June 2011. Compl. ¶ 42 a-d. The Complaint also alleges that Hobart received transactions valued at over $160,000 in August 2011 for which Hanse did not receive commissions. Compl. ¶ 43. It is alleged that Hobart intentionally made deals with Hanse's clients in Korea without Hanse in an attempt to circumvent the payment of commissions. Compl. ¶ 48.

In this situation, Hanse and Hobart have an express Agreement, which specifically directs that manner in which each party will be compensated. Hanse cannot recover under a claim of unjust enrichment due to the express Agreement, and the claim must be dismissed.

###### d. Intentional Interference with Contract

In this case, Hanse cannot bring a claim for Intentional Inference with Contract against Hobart. This claim was originally against Defendants WinUs and John Does 1-4. Compl. ¶¶ 82-89. WinUs has since been released from the action and John Does 1-4 have yet to be named. Hobart is a party to the original Agreement. Compl. ¶ 11. Hobart cannot be held liable for inducing interference with the contract, because it is a party to the Agreement. Only a third party could be held liable for interference with the Agreement. For this reason, Hanse's claim for Intentional Interference with Contract against Hobart must be dismissed.

###### e. Fraud

In this case, Hanse has not properly alleged a claim of fraud against Hobart. The Complaint alleges that Hobart "negotiated contract with clients in Korea in effort to usurp the Representative Agreement and avoid commission payments as far back as 2008." Compl. ¶ 102. The complaint further alleges that Hanse was unaware of Hobart's transactions, and that Hobart's actions were done with the intent to fraudulently mislead Hanse. Compl. ¶¶ 103-04. Allegedly, the content of some of the representations made by Hobart to these clients was the fact that Hanse was no longer Hobart's representative in Korea. Compl. ¶ 105.

Hanse never mentioned the parties involved in the alleged fraud. While it did mention that Hobart was allegedly involved, the specific names of clients were not mentioned. Compl. ¶ 99-116. Hanse never mentioned all of the representations that Hobart allegedly made to Hanse's clients—only that Hanse was no longer the representative in Korea. Compl. ¶ 105. The Complaint specifically states "Hobart…made

11

various misrepresentations to various Korean clients developed and cultivated by Hanse including, but not limited to, that Hanse was no longer a Hobart representative in spite of the still existing and current Representative Agreement." Compl. ¶ 105. The Complaint fails to mention a time and place in which these representations were made as well. Finally, Hanse fails to mention Hobart's fraudulent scheme and intent in carrying out this action.

Because Hanse failed to reach the heightened fraud pleading requirement of Rule 9(b), Hanse's claim for fraud must be dismissed.

### f. Conspiracy

In this case, Hanse's claim for civil conspiracy does not stand. Because Hanse has not pleaded any adequate, independent tort claims, or specific conspiracy damages, its claim for civil conspiracy must be dismissed.

### III. Conclusion

This Court must construe the facts in the most favorable light to Hanse, the non-moving party. Based upon Hanse's Complaint, Hanse alleges that Hobart breached the express Agreement between Hanse and Hobart. Compl. ¶¶55-56.

Hanse alleges that Hobart breached the contract by failing to pay commissions to Hanse for transactions negotiated within Hanse's territory. Hanse cannot prove a breach of contract because the express Agreement states that Hanse is only entitled to commissions based on products sold within the territory. Therefore, the Motion to Dismiss for breach of contract based on failing to pay commissions for transactions negotiated within the territory must be GRANTED.

Hanse also alleges that Hobart breached the Agreement by failing to honor the "best efforts" provision of the Agreement in three ways: (1) delaying the closing of transactions; (2) obtaining quotes directly from Hanse's clients with the intention of avoiding commissions; and (3) attempting to negotiate transactions with clients within the territory.  Based upon Hanse's Complaint, Hobart began engaging in delayed conduct and processing which could have led to more products sold and more commissions by the end of the contract term. However, Hobart had every right to communicate directly with Hanse's clients and obtain price quotes from them, pursuant to specific contract language. Additionally, Hobart had every right to negotiate transaction with clients in Korea, as the clients in Korea were primarily Hobart's clients, and Hanse was solely Hobart's agent. Therefore, the Motion to Dismiss for breach of contract for delaying closing transactions must be DENIED. The Motion to Dismiss for breach of contract for obtaining quotes directly from Hanse's client and the Motion to Dismiss for breach of contract for attempting to negotiate transaction within Hanse's territory must be GRANTED.

Based upon Hanse's complaint, Hanse alleges that it relied on Hobart's representations that it was the exclusive representative in Korea and that Hobart wrongfully failed to honor those representations. Compl. ¶¶ 69-69. While Hanse alleges, through the theory of promissory estoppel, it was Hobart's exclusive representative in Korea, the claim fails because Hanse is a party to an express written agreement that does not name Hanse as the exclusive representative in Korea. Compl. ¶ 66; Compl. Sch. 2. Therefore the Motion to Dismiss for failure to state a claim for Promissory Estoppel is GRANTED.

Based upon Hanse's complaint, Hanse alleges that Hobart has retained and/or received commissions rightfully belonging to Hanse. Compl. ¶ 75. While Hanse alleges, through the theory of unjust enrichment, that it has been unfairly compensated, the claim fails because Hanse is a party to an express written agreement that explains the way Hanse will be compensated. Compl. ¶ 75; Agreement 5.0. Therefore the Motion to Dismiss for failure to state a claim for Unjust Enrichment is GRANTED.

Based upon Hanse's complaint, Hanse alleges that WinUs and John Does 1-4 induced Intentional Interference of Contract with Hobart. Win Us has been released from the case and John Does 1-4 have yet to be named. Hobart is a party to the original agreement. Hanse has failed to state a claim and the Motion to Dismiss for Intentional Interference with Contract is GRANTED.

Based upon Hanse's Complaint, Hanse alleges Hobart fraudulently communicated with Hanse's established clients in Korea in an attempt to circumvent commission payments to Hanse. Compl. ¶ 102-104. Hanse, however, fails to plead with the specificity required under Fed. R. Civ. P. 9(b), and does not name specific parties, representations, or the time, place and content of misrepresentations. Compl. ¶ 105-107. Due to the lack of specificity in the pleading, the Motion to Dismiss for failure to state a claim for Fraud is GRANTED.

Based upon Hanse's complaint, Hanse alleges that Hobart, along with the unnamed John Does 1-4, acted in concert to remove Hanse's contractual affiliation with Hobart as well as removing Hanse's affiliation with its customers in Korea. Compl. ¶ 91,

94. However, because Hanse has not successfully pled any underlying tort claims, the Motion to Dismiss for failure to state a claim for Conspiracy, is GRANTED.[1]

Thus, Hobart's Motion to Dismiss is GRANTED in part, DENIED, and Hanse's claim for Breach of Contract for Hobart's delay in closing transactions remains to be adjudicated.

**DONE** and **ORDERED** in Dayton, Ohio this 13th day of August, 2012

**\*s/THOMAS M. ROSE**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Emelia J. Hanson in drafting this opinion.